# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RAY TERESE                                    CIVIL ACTION

VERSUS                                        NO. 09-4342

1500 LORENE LLC, et al.                       SECTION: "G"(4)

## ORDER AND REASONS

Before the Court is Defendant 2700 Whitney LLC's ("Whitney") Motion for Summary Judgment,[1] wherein it seeks the dismissal of Plaintiff Ray Terese's ("Plaintiff") claims in their entirety. After reviewing the pending motion, the memorandum in support, the opposition, the reply, the record, and the applicable law, the Court will deny the pending motion.

## I. Background

### A. Factual Background

On July 8, 2009, Plaintiff filed a complaint in the Eastern District of Louisiana, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332, claiming that "on/or about October 8, 2008, plaintiff fell from a second story landing, which had no railing, at [] Summerfield Apartments," and which is owned by Defendants O'Brien Realty, L.L.C. and 1500 Lorene, L.L.C. ("Lorene").[2] Plaintiff claims that "the proximate cause of the injury and damage to the plaintiff was negligence, and/or strict liability, failure to warn, and other acts of negligence of said defendants."[3] Moreover, Plaintiff seeks $2,000,000 in compensation for "sustained and severe injuries to the cervical/lumbar portions of [Plaintiff's] spine and to his legs causing past, present and future mental and physical

---

[1]  Rec. Doc. 189.

[2]  Rec. Doc. 1 at ¶¶ 6-7. O'Brien Realty, L.L.C. was terminated as a party on February 2, 2010. *See* Rec. Doc. 12.

[3]  Rec. Doc. 1 at ¶ 7.

pain and suffering; loss of income, loss of earning capacity, and medical bills."[4] In the Statement of Uncontested Material Facts, the parties give a more full account of the incident.[5] Lorene was the owner of Summerfield Apartments, which was undergoing post-Katrina renovations. Plaintiff was a subcontractor who was hired to install counter tops in one of the buildings when he fell from a second story balcony, which was missing a five foot section of railing on the end due to Katrina damage.[6] In the Third Amended and Supplemental Complaint, Plaintiff added Whitney, general contractor of the construction project, as a defendant.[7]

### B. Procedural Background

This matter was first assigned to Judge Eldon E. Fallon, Section "L," and then reassigned to Section "G" on October 6, 2011 as part of a new docket.[8] On August 7, 2012, Whitney filed the pending Motion for Summary Judgment,[9] wherein it requests that this Court dismiss this case in its entirety. Plaintiff filed an opposition on August 22, 2012.[10] Whitney filed a reply to the memorandum in opposition on September 6, 2012.[11]

## II. Parties' Arguments

---

[4]  *Id.* at ¶ 8.

[5]  Rec. Doc. 189-2.

[6]  *Id.* at p. 1.

[7]  Rec. Doc. 106.

[8]  Rec. Doc. 170.

[9]  Rec. Doc. 189.

[10]  Rec. Doc. 195.

[11]  Rec. Doc. 199.

In support of the pending motion, Whitney describes the building that Plaintiff was working on when he allegedly sustained his injury. According to Whitney, the building:

> sustained significant roof and siding damage as a result of Hurricane Katrina. That building was a two story building which consisted of four apartment units, two on the first floor and two on the second... There was a steel and concrete staircase that went from the ground to the second floor balcony in the middle of the building. That staircase joined a balcony that ran across that side of the building. The balcony had a metal railing on either side of the staircase, and at both ends of the balcony. However, as a result of Katrina damage to the roof and the side wall, one end of the railing of the balcony, approximately five feet in width, was damaged and not in the proper location.[12]

Whitney contends that on the day prior to the accident, Plaintiff "parked next to a red dumpster," and "[f]rom that vantage point, [Plaintiff] would have had a clear and unobstructed view of the side of the apartment building, from which he allegedly fell."[13] Whitney also avers that Plaintiff "would have had a clear and unobstructed view of the staircase leading from the ground to the second floor balcony, which was positioned in the middle of the building, and he would have had a clear and unobstructed view of the fact that the five foot section of railing at the end of the balcony was missing."[14]

According to Whitney, later that day Plaintiff returned to his car, where "for a second time that day he had an opportunity to see that the staircase to the second floor was in the middle of the balcony and not at the end of the balcony where the missing railing was."[15] By the day of the incident, Whitney claims that Plaintiff "had **seven** (7) opportunities to observe the location of the

---

[12] Rec. Doc. 189-3 at p. 2.

[13] *Id.* at p. 5.

[14] *Id.*

[15] *Id.*

staircase leading to the second floor balcony to the ground on the side where he allegedly fell, all <u>prior</u> to his fall."[16] As such, Whitney argues that "there was absolutely no reason for [Plaintiff] to step off of the end of the balcony where the railing was missing, as he allegedly did. Nevertheless, that is what [Plaintiff] claims to have occurred."[17] Whitney also emphasizes that Plaintiff has admitted "that he never looked down to see if there was a staircase."[18] Moreover, Whitney contends that Plaintiff failed to use "common sense" and "should have been more aware of his surroundings and observations," because he was working on a site that was severely damaged by Hurricane Katrina.[19]

Whitney claims that "the existence of a duty is a question of law,"[20] and that "[a] pedestrian is charged with the responsibility of seeing obvious defects and/or obstructions in his or her path, and is likewise charged with exercising the caution expected of a reasonably prudent person in the area."[21] In addition, Whitney asserts that "[w]here a situation is open and obvious and where there is no ruin, vice, or defect, there is no duty to warn."[22]

Next, Whitney discusses in depth the Louisiana Supreme Court's recent decision in *Pryor v. Iberia Parish School Board*.[23] In that case, the plaintiff was a sixty-nine year old woman who

---

[16]   *Id.* at p. 6 (emphasis in original).

[17]   *Id.* at p. 7.

[18]   *Id.*

[19]   *Id.* at p. 11.

[20]   *Id.* at p. 21 (citing *McCloud v. Housing Authority of New Orleans*, 08-0094 (La. App. 4 Cir. 06/11/08); 987 So.2d 360).

[21]   *Id.* (citing *Kuhn v. Oulliber*, 225 So.2d 317 (La. App. 4 Cir. 1969)).

[22]   *Id.* (citing *Crittenden v. Fidelity and Casualty Co. of New York*, 83 So.2d 538 (La. App. 2 Cir. 1955)).

[23]   2010-1683 (La. 03/15/11); 60 So.3d 594.

sustained injuries while a spectator at a high school football game. She was sitting on "a metal frame bleacher approximately fifteen feet high and two hundred fifty feet long [with] nine wood seat boards with nine wood foot boards. The bleachers ha[d] rails around the sides and rear, but d[id] not have rails in the front, and d[id] not have aisles to facilitate entrance or exit. The seat boards [were] uniform and symmetrical, with the exception of the space between the first and second seat boards, which [were] positioned approximately eighteen inches apart. All of the other seat boards [were] approximately eight inches apart in height."[24] The plaintiff later descended the bleachers to use the restroom and when she "came to the eighteen-inch gap between the first and second row, instead of lying on her side and swinging her legs over the gap as she had done earlier, plaintiff attempted to simply step down. In the process, plaintiff fell and sustained injuries."[25] After a bench trial before the district court, the court dismissed the suit with prejudice, finding that "under the risk/utility analysis, the condition of the bleachers was not unreasonably dangerous."[26] The intermediate appellate court reversed, and the Louisiana Supreme Court reinstated the district court's ruling. Whitney argues that the *Pryor* court held that (1) defendant's generally do not have a duty to protect against an open and obvious hazard; and (2) in determining whether an alleged defect presents an unreasonable risk of harm, the trier of fact must balance the gravity of the risk of harm against the individual and societal rights and obligations, including four factors: a) utility of the thing; b) likelihood and magnitude of the harm, which includes the obviousness and apparentness of the

---

[24]   *Id.* at 595.

[25]   *Id.* at 596.

[26]   *Id.*

condition; c) the cost of preventing the harm; and d) the nature of the plaintiff's activities in terms of its societal utility, or whether it is dangerous by nature.[27]

Whitney reasons that the *Pryor* court reinstated the district court's order dismissing the suit because "the evidence established that the plaintiff was aware of the open and obvious risk and could have avoided the risk by using additional care as she did when she ascended the bleachers."[28] Likewise, Whitney maintains that here Plaintiff had ample opportunities to observe the place where he fell and because the "facts of this case are aligned with the facts in *Pryor*, [d]ismissal of the plaintiff's claims is warranted."[29]

In opposition to the pending motion, Plaintiff "maintains that there remain genuine issues of material fact for the trier of fact to determine whether 2700 Whitney owed a duty to him because the missing rail on the second floor balcony which plaintiff fell was not an open and obvious defect as defined by Louisiana jurisprudence."[30] That is, whether the missing guardrail on the second floor balcony was an open and obvious defect is a disputed issue of fact here.

First, Plaintiff emphasizes that on a motion for summary judgment, the movant has the burden to demonstrate that there is no genuine issue of material fact, and that "the rule should be 'strictly construed so as to insure that factual issues will not be determined without the benefit of the truth-seeking procedures of a trial.'"[31]

---

[27] Rec. Doc. 189-3 at pp. 22-23.

[28] *Id.* at p. 23.

[29] *Id.*

[30] Rec. Doc. 195 at p. 1.

[31] *Id.* at p. 7 (quoting *Jackson Tool 7 Die, Inc. v. Smith*, 339 F.2d 88 (5th Cir. 1964)).

Further, Plaintiff claims that in *Waller v. Shelter Mutual Insurance Co.*,[32] the Louisiana Court of Appeal for the Fifth Circuit held that "the owner or custodian of immovable property has a duty to keep the property in a reasonably safe condition," and "must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence."[33] Citing *Pryor*, Plaintiff asserts that the trier of fact must determine whether a defect presents an unreasonable risk of harm by balancing the "gravity of the risk of the harm against the individual and societal rights and obligations, the societal utility, and the cost and feasibility of repair."[34] Plaintiff argues that upon these factors Whitney cannot prove that the lack of a guardrail was not unreasonably dangerous as a matter of law under the risk/utility test, and therefore, its motion for summary judgment should be denied.[35]

Plaintiff distinguishes *Pryor* on the basis that the district court's determination was made "following the culmination of a full trial on the merits that the stadium bleachers did not present an unreasonable risk of harm. Unlike the instant matter, *Pryor* was not determined on a Motion for Summary Judgment."[36] As such, Plaintiff asserts that the jury must determine whether an unreasonable risk of harm existed, which is a question "left to the trier of fact, not for the court on summary judgment."[37] In addition, Plaintiff further distinguishes *Pryor* on the basis that in that case

---

[32]   41,215 (La. App. 2 Cir. 06/28/06); 935 So.2d 288

[33]   Rec. Doc. 195 at p. 7.

[34]   *Id.* at p. 8.

[35]   *Id.* at pp. 8-11.

[36]   *Id.* at p. 11.

[37]   *Id.* at p. 12 (citing *Boye v. Daiquiris & Creams No. 4, Inc.*, 11-118 (La. App. 5 Cir. 11/15/11); 80 So.3d 505).

7

the plaintiff admitted that she noticed the gap but chose not to sit in a section better suited for people with physical impairments, while here Plaintiff "has testified that he was unaware of the dangerous condition of the balcony."[38]

In reply, Whitney asserts that Plaintiff's account of the incident demonstrates that there is no material fact in dispute and that Plaintiff "simply cannot collect damages from any defendant in this case given the **open and obvious** nature of the area where the incident occurred."[39] Whitney refutes the "self-serving" testimony that Plaintiff never observed the missing railing, but argues that even if that were true, it "is only a very small part of Plaintiff's duty to himself."[40] Instead, Whitney maintains that Plaintiff "breached a duty to himself, and was the sole cause of his accident."[41] Whitney contends that under *Pryor*, the defendants had no duty to "protect [Plaintiff] from his own lack of use of Common Sense and the prudent person standard under these facts and circumstances."[42] Moreover, Whitney claims that under Louisiana law there is no duty to warn imposed on defendants when a condition is "open and obvious."[43]

Whitney rejects Plaintiff's reliance on *Waller* to support his claim that owners or custodians of immovable property owe others a duty to keep the property in a "reasonably safe condition," on the basis that it was decided before *Pryor* and is distinguishable from *Pryor*.[44] Whitney argues at

---

[38] *Id.* at p. 13.

[39] Rec. Doc. 199 at p. 2 (emphasis in original).

[40] *Id.* at p. 3.

[41] *Id.* at p. 4.

[42] *Id.*

[43] *Id.* at pp. 4-5.

[44] *Id.* at p. 14.

8

length that the conditions in this case do not constitute an unreasonable risk of harm.[45] Finally, Whitney stresses that the Court should not rely solely on the lack of a railing to determine whether the condition presented an unreasonable risk of harm, but rather that the Court must consider the "totality of the circumstances," including that "there was safe ingress and egress from the second floor balcony, which was **open and obvious**."[46]

### III. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[47] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence but refrains from making credibility determinations or weighing the evidence."[48] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[49] If the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of material fact exists and the moving party is entitled to judgment as

---

[45]  *Id.* at p. 16.

[46]  *Id.* at p. 17 (emphasis in original).

[47]  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[48]  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[49]  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (citation omitted).

a matter of law.[50] Because factual disputes may not be resolved on summary judgment, a plaintiff need not offer all of its evidence, but rather only enough to show that a jury *might* return a verdict in its favor.[51] If the nonmovant would bear the burden of proof at trial on a claim, the movant may simply point to the absence of evidence, which then returns the burden on the motion for summary judgment to the nonmovant.[52] Then, the nonmovant must point to competent evidence that there is an issue of material fact so as to warrant trial.[53] To defeat summary judgment, the nonmovant must direct the court's attention to specific evidence in the record to establish an issue of material fact as to each claim on which it will bear the burden of proof at trial.[54]

## IV. Law and Analysis

Whitney contends that this matter is appropriate for summary judgment because there are no material facts in dispute regarding the incident or the conditions surrounding it. Whitney further argues that the only issue in dispute is one to be decided as a matter of law – whether the defendants owed a duty to Plaintiff to protect him from this harm. Louisiana jurisprudence is clear that the existence of a duty is a question of law.[55] Generally, there is a duty to keep property in a reasonably safe condition.[56] "The owner or custodian must discover any unreasonably dangerous condition on

---

[50] *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147-48 (5th Cir. 1992).

[51] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991).

[52] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (per curiam).

[53] *Id.*

[54] *Rizzo v. Children's World Learning Ctrs.*, 84 F.3d 758, 762 (5th Cir. 1996).

[55] *See, e.g.*, *Harris v. Pizza Hut of La., Inc.*, 455 So.2d 1364, 1371 (La. 1984) ("Duty is a question of law.").

[56] *Pryor*, 60 So.3d at 356.

the premises, and either correct the condition or warn potential victims of its existence."[57] However, there is generally "no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff."[58] In *Pryor*, the Louisiana Supreme Court stated that "[i]t is the court's obligation to decide which risks are unreasonable based upon ***the facts*** and circumstances of each case."[59] "The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous."[60] The determination of what is "open and obvious" is a factual inquiry.[61]

The language in *Pryor* reserving to the courts the determination of what conditions are unreasonable may at first glance lead one to believe that this inquiry is legal, not factual. However, one should first note that in *Pryor*, the trier of fact was the court, as it was a bench trial. Moreover, the *Pryor* court went on to state, "In determining whether a defect presents an unreasonable risk of harm, the ***trier of fact*** must balance the gravity of the risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair."[62] The *Pryor* court stated that "the ultimate determination of unreasonable risk of harm is subject to review under the

---

[57]   *Id.*

[58]   *Id.*

[59]   *Id.* (emphasis added)

[60]   *Eisenhardt v. Snook*, 2008-1287 (La. 3/17/09); 8 So.3d 541, 544.

[61]   *Id.* at 545 ("Based on our review of the record, we find no manifest error in the district court's factual determination that the condition of the steps should have been open and obvious.").

[62]   *Pryor*, 60 So.3d at 356 (emphasis added).

manifest error standard."[63] In contrast, questions of law are reviewed de novo.[64] Moreover, in reinstating the district court's judgment, the Louisiana Supreme Court in *Pryor* held that "we cannot conclude the district court's ***factual determination*** that the bleachers were not unreasonably dangerous is not clearly wrong. Specifically, the evidence in the record supports the finding that the social utility of the bleachers outweighed any minimal risk posed by the eighteen-inch gap between the first and second seat boards. The evidence establishes that plaintiff was aware of this open and obvious risk."[65]

While the existence of a duty is a question of law, that inquiry cannot be resolved until there is a determination of whether the condition of the building was unreasonably dangerous, which is a conclusion that itself may only be reached after balancing several other factual determinations. The trier of fact – in this case the jury – must make those factual determinations, such as if the condition was open and obvious, and then weigh that evidence to establish if the condition was unreasonably dangerous, which a district court may not do upon a motion for summary judgment.[66] Specifically, here, the trier of fact must decide if the absence of a railing was open and obvious and an unreasonably dangerous condition under the totality of the circumstances, not the Court through a summary judgment motion. It is immaterial that the condition of the building is undisputed, because even after these factual determinations are resolved, it is still for the jury to assess and weigh "the social value and utility of the hazard" to determine if it "outweigh[s], and thus justif[ies], its

---

[63]  *Id.*

[64]  *Domingue v. Bodin*, 08-62 (La. App. 3 Cir. 11/05/08); 996 So.2d 654, 657.

[65]  *Pryor*, 60 So.3d at 598 (emphasis added).

[66]  *Delta & Pine Land*, 530 F.3d at 398-99.

potential harm to others."[67] Moreover, the parties dispute whether Plaintiff was aware of the condition of the building, a factual determination which the *Pryor* court recognized as material in the inquiry of whether a risk is unreasonably dangerous.[68] Because disputed issues of fact remain, the current matter is inappropriate for summary judgment.

**V. Conclusion**

The question of whether a condition presented an unreasonably dangerous harm, and therefore imposed a duty on the defendants, is a factual inquiry reserved for the jury, which also requires several other factual determinations, such as if the condition was open and obvious. It is only after these factual issues are resolved and the evidence is weighed, that the Court can answer the legal question of whether the defendants owed a duty to Plaintiff. Therefore, this matter cannot be resolved on summary judgment and, thus, the pending motion is denied. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Whitney's Motion for Summary Judgment[69] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 10th day of December, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[67] *Pryor*, 60 So.3d at 597 (internal quotation omitted).

[68] *Id.* at 598.

[69] Rec. Doc. 189.