## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RAY TERESE**                                                  **CIVIL ACTION**

**VERSUS**                                                       **NO. 09-4342**

**1500 LORENE LLC, et al.**                          **SECTION: "G"(4)**

### ORDER AND REASONS

Before the Court is Defendant 1500 Lorene LLC's Motion to Dismiss Case for Lack of Subject Matter Jurisdiction,[1] wherein it seeks the dismissal of Plaintiff Ray Terese's ("Plaintiff") claims in their entirety, claiming that a lack of diversity deprives this Court of subject matter jurisdiction. After reviewing the pending motion, the memorandum in support, the opposition, the replies, the record, and the applicable law, the Court will grant the pending motion.

### I. Background

#### A. Factual Background

On July 8, 2009, Plaintiff filed a complaint in the Eastern District of Louisiana, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332, claiming that "on/or about October 8, 2008, plaintiff fell from a second story landing, which had no railing, at [] Summerfield Apartments," and which is owned by Defendants O'Brien Realty, L.L.C. and Lorene.[2] Plaintiff claims that "the proximate cause of the injury and damage to the plaintiff was negligence, and/or strict liability, failure to warn, and other acts of negligence of said defendants."[3] Moreover, Plaintiff seeks $2,000,000 in compensation for "sustained and severe injuries to the cervical/lumbar portions of

---

[1] Rec. Doc. 213.

[2] Rec. Doc. 1 at ¶¶ 6-7.

[3] *Id.* at ¶ 7.

[Plaintiff's] spine and to his legs causing past, present and future mental and physical pain and suffering; loss of income, loss of earning capacity, and medical bills."[4] In the Statement of Uncontested Material Facts, the parties give a more full account of the incident.[5] Lorene was the owner of Summerfield Apartments, which was undergoing post-Katrina renovations. Plaintiff was a subcontractor who was hired to install counter tops in one of the buildings when he fell from a second story balcony, which was missing a five foot section of railing on the end due to Katrina damage.[6]

### B. Procedural Background

This matter was first assigned to Judge Eldon E. Fallon, Section "L," on July 8, 2009.[7] In the original complaint, Plaintiff named O'Brien Realty, L.L.C. ("O'Brien Realty") and 1500 Lorene, L.L.C. ("Lorene") as defendants. Plaintiff asserted that he was a resident of Santa Rosa Beach, Florida and that Lorene and O'Brien Realty were "both limited liability companies, and both having their principal place of business in a state other than the State of Florida."[8] On January 29, 2010, Plaintiff moved for leave of court to dismiss O'Brien Realty with prejudice, claiming that after discovery it became apparent that O'Brien Realty "has no connection to, nor liability in this case."[9] Judge Fallon granted this request and dismissed O'Brien Realty with prejudice.[10]

---

[4]   *Id.* at ¶ 8.

[5]   Rec. Doc. 189-2.

[6]   *Id.* at p. 1.

[7]   Rec. Doc. 1.

[8]   *Id.* at p. 1.

[9]   Rec. Doc. 9-1.

[10]   Rec. Doc. 12.

Upon receiving leave of court, Plaintiff filed an Amended and Supplemental Complaint on March 29, 2010.[11] In this pleading Plaintiff added Catlin Insurance Company ("Catlin") as a defendant, claiming that it is "a foreign insurance company having its principal place of business in a state other than Florida."[12] On April 22, 2010, Plaintiff requested that Catlin be dismissed with prejudice,[13] and again Judge Fallon granted the dismissal.[14]

On May 28, 2010, Plaintiff filed a Second Amended and Supplemental Complaint to add Century Surety Company ("Century") as a defendant and identified Century as "a foreign insurance company having its' [sic] principal place of business in a state other than the State of Florida."[15] Century filed a motion for summary judgment, which Judge Fallon granted and dismissed all claims against Century with prejudice.[16]

On November 23, 2010, Plaintiff filed a Third Amended and Supplemental Complaint adding 2700 Whitney L.L.C. ("Whitney") and J. & J. Builders, L.L.C., as defendants, again claiming that both are "limited liability companies having their principal place of business in a state other than the State of Florida."[17] On April 21, 2011, Plaintiff filed a Fourth Amended and Supplemental Complaint, adding Jay Guffey ("Guffey"), "a resident of the City of Kenner, State of Louisiana,"

---

[11] Rec. Doc. 18.

[12] *Id.* at p. 1.

[13] Rec. Doc. 21.

[14] Rec. Doc. 22.

[15] Rec. Doc. 31.

[16] Rec. Doc. 96.

[17] Rec. Doc. 106.

as a defendant.[18] On June 23, 2011, Plaintiff requested that Guffey be dismissed with prejudice,[19] and Judge Fallon entered an order to this effect.[20]

As part of a new docket, this case was reassigned to Section "G" of this Court on October 6, 2011.[21] On February 1, 2012, J & J Builders, L.L.C. was dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m).[22] In a status conference held on December 4, 2012,  the Court informed the parties that the citizenship of Lorene and Whitney, the remaining defendants, had not been properly pled, because the various complaints did not identity the constituent members of the limited liability companies and their citizenship. The Court afforded Plaintiff thirty (30) days to allege properly the citizenship of these entities to determine whether diversity exists, becasue otherwise this Court would not have subject matter jurisdiction.[23]

On December 18, 2012, Lorene filed the pending motion to dismiss for lack of jurisdiction, claiming that at the time of filing, Kevin O'Brien, a managing member of Lorene, was a citizen of the state of Florida, like Plaintiff.[24] On December 21, 2012, Whitney filed a separate motion to dismiss wherein it adopted the arguments of the motion to dismiss filed by Lorene.[25] On January 4, 2013, Plaintiff requested leave to file a fifth amended and supplemental complaint, wherein he now

---

[18]   Rec. Doc. 143.

[19]   Rec. Doc. 152.

[20]   Rec. Doc. 153.

[21]   Rec. Doc. 170.

[22]   Rec. Doc. 179.

[23]   Rec. Doc. 209.

[24]   Rec. Doc. 213.

[25]   Rec. Doc. 214.

claims that he is "domiciled in the State of Louisiana." and that Whitney is a citizen of Connecticut, Maine, Michigan, New Jersey, Colorado, or "alternatively Florida," and that Lorene is a citizen of Connecticut, New Mexico, Maine, Colorado or "alternatively Florida."[26] On January 8, 2013, Plaintiff filed an opposition to Lorene's motion to dismiss for lack of subject matter jurisdiction.[27] On January 14, 2013, Whitney filed a reply.[28] On January 15, 2013, Lorene filed its own reply.[29]

## II. Parties' Arguments

### A. Lorene's Argument in Support of Lack of Subject Matter Jurisdiction

Lorene claims that this Court lacks subject matter jurisdiction because at the time of filing, July 8, 2009, Plaintiff and a member of Lorene were citizens of Florida. To establish Plaintiff's citizenship, Lorene points to the original complaint and Plaintiff's deposition where he stated that he resided in Florida at the time of filing.[30] Concerning Lorene and Whitney, Lorene cites the Fifth Circuit in *Harvey v. Grey Wolf Drilling Co.*,[31] to support its position that the citizenship of a limited liability company is determined by all of its members. Specifically, Lorene claims that at the time of filing, its managing member, Kevin O'Brien ("Mr. O'Brien"), was a citizen of Florida.[32] Therefore, Lorene claims that the Court must dismiss this case pursuant to Federal Rule of Civil

---

[26]   Rec. Docs. 224, 224-2.

[27]   Rec. Doc. 227.

[28]   Rec. Doc. 235.

[29]   Rec. Doc. 237.

[30]   Rec. Doc. 213-1 at p. 1 (citing Rec. Doc. 1; Rec. Doc. 213-4).

[31]   542 F.3d 1077 (5th Cir. 2008).

[32]   Rec. Doc. 213-1 at p. 1.

Procedure 12(b)(1) for lack of subject matter jurisdiction because diversity did not exist at the time of filing.

In outlining the relevant legal principles to determine Mr. O'Brien's citizenship, Lorene cites Fifth Circuit precedent that states that where a person establishes a domicile is the state of his or her citizenship.[33] Moreover, there is a presumption of continuing domicile in the original domicile whenever one relocates.[34] This presumption of continuing domicile persists unless it is rebutted by sufficient evidence of change, and mere presence in a new location alone will not suffice.[35] Lorene claims that to establish new residence, the person asserting diversity must prove both (1) residence in a new state; and (2) an intention to remain in that new state indefinitely. Lorene sets out a number of factors the Fifth Circuit has determined are relevant in considering if there has been a change to domicile: "places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has a driver's license and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family."[36]

With regard to Mr. O'Brien, Lorene's managing member, Lorene explains that he and his family moved from Connecticut to Florida on January 15, 2003, and that between March 2004 and August 31, 2010 "Kevin O'Brien and his wife owned their home, located at 2216 Fisher Island Road, Fisher Island, Florida, 33109."[37] However, Lorene further explains that in September of 2008, the O'Brien's were owners of a fractional "time share" interest in a "three-bed room vacation

---

[33] *Id.* at p. 2 (citing *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954)).

[34] *Id.* at p. 3 (citing *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996)).

[35] *Id.* (citing *Acridge v. Evangelical Lutheran Good Samaratan Soc.*, 334 F.3d 444, 448 (5th Cir. 2003)).

[36] *Id.* (citing *Acridge*, 334 F.3d at 448).

[37] *Id.* at pp. 3-4.

condominium in Aspen, Colorado."[38] Lorene claims that the O'Briens "decided to extend a two-week vacation in their Colorado 'time share' unit and to 'try out' living in Colorado to see if they preferred living there, instead of continuing to live in Florida." After September 2008, the O'Brien's rented a house located at 73 Thunderbowl Lane, Aspen, Colorado, 81611, but Lorene argues that during this time they still "maintained their Florida home and Florida domicile," and that during all of 2009 "Mr. and Mrs. O'Brien resided either in their Florida home or in a Colorado rental unit."[39] Lorene contends that it was only in "late 2009 or early 2010" that the O'Briens "made the decision to change their domicile from Florida to Colorado," and placed the Florida home on the market in January of 2010.[40]

To further establish Mr. O'Brien's Florida citizenship, Lorene claims that "[o]n or about July 8, 2009, Kevin O'Brien was registered to vote in the State of Florida. Before July 8, 2009. Kevin O'Brien last voted in the State of Florida," and that he only first voted in Colorado in 2010.[41]

Concerning taxes, Lorene avers that "before and after July 8, 2009, [Mr.] O'Brien paid 2009 state and local taxes in Florida and in Colorado." Lorene points out that Florida does not have a state income tax, and that in 2009 he filed a Colorado state income tax return "as a part-time resident of the State of Colorado."[42]

With regard to real and personal property, Lorene maintains that from 2004 through August 31, 2010, Mr. O'Brien owned the family's Florida home and made the mortgage payments. In

---

[38] *Id.* at p. 4.

[39] *Id.*

[40] *Id.*

[41] *Id.* at p. 5.

[42] *Id.*

addition, the family owned "a golf cart, furniture, appliances and other personal property that they maintained and used in their Florida home. They purchased new appliances for their Florida home in March and April of 2009."[43] Lorene further adds that the O'Briens maintained homeowner's insurance, and accounts for utilities, telephone and DirecTV at the Florida home during 2009.[44] In addition, Lorene notes that Mr. O'Brien "paid individuals for housekeeping services, painting, repairs and other maintenance of their Florida home during 2009, including on or about July 8, 2009," and paid association fees in connection with the Florida home.[45]

Lorene highlights "on or about July 8, 2009," Mr. O'Brien had a Florida driver's license which listed the Fisher Island home as his home address. However, Lorene also notes that Mr. O'Brien had a Colorado driver's license that was issued on December 9, 2008 and "was in effect on or about July 8, 2009," and listed a Colorado address.[46] Mr. O'Brien also had bank accounts in both states during July of 2009.

In addition, Lorene states that Mr. O'Brien belonged to no clubs or churches in Colorado in 2009, but that "on or about July 8, 2009, [Mr.] O'Brien was a member of the Fisher Island Club."[47] Moreover, Lorene claims that "between 2008 and late 2009, Mr. and Mrs. Kevin O'Brien were members of the New Community Seventh Day Adventist Church in South, Miami, Florida. They made charitable donations to that church during 2009, as well as in other years."[48]

---

[43] *Id.*

[44] *Id.* at p. 6.

[45] *Id.*

[46] *Id.* at pp. 6-7.

[47] *Id.* at p. 7.

[48] *Id.*

Finally, Lorene states that between April 1, 2008 and March 31, 2009, Mr. O'Brien leased a business office in Miami, Florida, and after the lease ended he "conducted his business out of his residences for the remainder of 2009 and 2010."[49] In January of 2010, Mr. O'Brien rented office space in Aspen, Colorado and now conducts business at his home in the same city.[50]

### B. Plaintiff's Argument in Support of Subject Matter Jurisdiction

#### 1. Plaintiff's Citizenship

In opposition to the pending motion and in support of a finding of subject matter jurisdiction, Plaintiff begins by addressing his own citizenship, now claiming that at the time of filing he was a Louisiana citizen.[51] While Plaintiff maintains that he was a Louisiana domiciliary at the time this action was filed, he also asserts that in the alternative, Mr. O'Brien was a citizen of Colorado, not Florida, and therefore complete diversity still exists even if Plaintiff was a Florida citizen at the time of filing. Plaintiff asserts that as of July 8, 2009, he "primarily resided in Louisiana." He cites a February 3, 2010 deposition where he explained that while he resided in Santa Rosa Beach, Florida, he would often stay at his aunt's house in Louisiana for work.[52] Moreover, Plaintiff claims he intended to remain in Louisiana at a home he owed as of 2004 in Slidell, Louisiana.

Plaintiff asserts that from July 2004 through July 8, 2009, Plaintiff primarily resided in Louisiana and the "vast majority of [Plaintiff's] personal property and all of his personal belongings (i.e. clothes, shoes, toothbrush, etc.) were located in Slidell," and that it was only on the weekends

---

[49] *Id.*

[50] *Id.* at p. 8.

[51] Rec. Doc. 227 at p. 3.

[52] Rec. Doc. 227-1 at pp. 3-4.

that he would visit his wife in Santa Rosa Beach, Florida.[53] Moreover, Plaintiff claims that he has "conducted business exclusively in Louisiana for the past twenty years as a countertop installer."[54] Specifically, he claims that he worked five days a week at Terese's Countertops in New Orleans, Louisiana, and had no other source of employment and never earned money in Florida. Plaintiff avers that all of his motor vehicles are registered in Louisiana, he had a Louisiana license in July of 2009, and has always paid personal income and property taxes in Louisiana, but has never paid taxes in Florida.[55]

In addition, Plaintiff states that all of his bank accounts were opened and have been maintained in Louisiana. As well, Plaintiff has utility, telephone, cellphone, and homeowner's insurance out of Louisiana. Finally, all of Plaintiff's doctors are in Louisiana.[56]

### 2. Mr. O'Brien's Citizenship

Turning to Mr. O'Brien, Plaintiff argues that Mr. O'Brien's physical residence in Colorado as of September 2008 is prima facie evidence of citizenship there. Since that date, Plaintiff argues that the O'Brien family has spent the majority of their time in Colorado.[57] Plaintiff further highlights that in September 2008, Mr. O'Brien enrolled his minor son in school is Aspen, Colorado, and that as of 2008 the son has not attended school in Florida.[58]

---

[53] *Id.* at p. 4.

[54] *Id.*

[55] *Id.* at p. 5.

[56] *Id.* at pp. 5-6.

[57] *Id.* at p. 6.

[58] *Id.*

Addressing Mr. O'Brien's taxes, Plaintiff highlights that on Mr. O'Brien's 2008 federal tax forms, he listed Miami Beach, Florida as his home address, but in 2009 he listed an Aspen, Colorado address. He has filed annual state income tax returns in Colorado since 2009.[59] In addition, Plaintiff states that Mr. O'Brien put his Miami home up for sale on September 20, 2007. Plaintiff also cites to a January 4, 2013 deposition of Mr. O'Brien to claim that he registered to vote in Colorado in December of 2008.[60] In addition, Plaintiff notes that the O'Brien's vehicles were transported and registered in Colorado prior to the filing of this suit. Finally, Plaintiff highlights that the O'Briens managed their business from Colorado and opened personal bank accounts there as well.[61] Finally, Plaintiff claims that all of the family's cars were registered in Colorado and that Mrs. O'Brien submitted a change of address form with the United States Postal Service to change their address to Colorado.[62]

## C. Whitney's Reply in Support of Lack of Subject Matter Jurisdiction

In reply to Plaintiff's opposition to the motion to dismiss for lack of subject matter jurisdiction, Defendant Whitney argues that in the initial complaint, Plaintiff stated that he was a "person of full age of majority and a resident of the City of Destin, Country [sic] of Santa Rosa Beach, State of Florida," and that diversity existed because the defendants had their principal places of business in a state other than Florida.[63] Whitney claims that "[t]hese Judicial Admissions should

---

[59] *Id.* at p. 7.

[60] *Id.* (citing Rec. Doc. 227-10 at p. 11). Mr. O'Brien did not claim that he registered to vote, but rather that he believed that he was automatically registered when he obtained a driver's license. *See* Rec. Doc. 227-10 at p. 11.

[61] *Id.* at pp. 7-9.

[62] *Id.* at p. 15.

[63] Rec. Doc. 232-2 at p. 1.

not be ignored. The Complaint was signed by his attorney, who by signing the Complaint, verified the accuracy of the information contained therein."[64]

Whitney cites to the February 10, 2010 deposition of Plaintiff, were he provided the court reporter with a Santa Rosa Beach, Florida address and testified under oath that he lived in Florida with his wife for eight months.[65] Whitney claims that in this deposition, Plaintiff also provided a Florida driver's license issued January 29, 2010 that listed a Florida address and he testified that he had all of his bills sent to that address.[66] Moreover, Whitney argues that in that same deposition, Plaintiff also stated that before living in Santa Rosa Beach, Florida, he resided in Slidell, Louisiana in a home that he owned, but had put the home up for sale for eight to nine months. Plaintiff also stated that he was not registered to vote in Louisiana.[67] Finally, Whitney points to statements in Plaintiff's deposition, where he stated that the reason he and his wife moved to Florida was because she had been offered a job with the Air Force.[68]

### D. Lorene's Reply in Support of Lack of Subject Matter Jurisdiction

In the reply filed by Lorene, it claims to address certain "incorrect factual assertions made by [Plaintiff]," in his opposition to the pending motion to dismiss for lack of subject matter jurisdiction.[69] First, Lorene argues that Plaintiff has overstated the purpose of this Court's December 4, 2012 order, which only sought to remedy the deficient allegations of citizenship with regard to

---

[64]  *Id.* at pp. 1-2.

[65]  *Id.* (citing Rec. Doc. 232-3 at p. 1).

[66]  *Id.* (citing Rec. Doc. 232-3 at p. 14).

[67]  *Id.* (citing Rec. Doc. 232-3 at p. 18).

[68]   *Id.* at p. 3.

[69]   Rec. Doc. 233-2.

Lorene and Whitney, not Plaintiff.[70] In addition, Lorene refutes Plaintiff's assertion that Mr. O'Brien listed his Miami home for sale as early as September 20, 2007; Lorene claims that while Mr. O'Brien listed the home for sale on that day, it was with the intention of netting a large profit and then renting another residence in Florida.[71] After the home was listed for about a year, Mr. O'Brien took the home off the market until he later re-listed it with another broker on December 3, 2009.[72] Therefore, Lorene argues that when this matter was filed, the Florida home was not on the market and had not been so for over ten months.[73]

Turning next to Mr. O'Brien's 2009 Colorado state income taxes, Lorene highlights that in that year Mr. O'Brien listed his status as "Part-Year Resident or Non-Resident," but that in 2010 he filed as a "Full-Year Resident."[74] Lorene contends that this is consistent with Mr. O'Brien's previous responses that he only decided to change residence to Colorado in late 2009 or early 2010.

Next, Lorene refutes Plaintiff's assertion that he registered to vote in Colorado. Lorene argues that Mr. O'Brien explained in his deposition that when he obtained a Colorado driver's license, he was automatically registered, but took no "conscience effort to register to vote in Colorado."[75]

Lorene also refutes Plaintiff's contention that Mrs. O'Brien filed a change of address form with the United States Postal Service to change their mailing address from Florida to Colorado. First,

---

[70] *Id.* at p. 1.

[71] *Id.* at p. 2.

[72] *Id.* at pp. 2-3.

[73] *Id.* at p. 3.

[74] *Id.* at p. 4.

[75] *Id.*

Lorene argues that there is no evidence that this form was filed before July 8, 2009; Mr. O'Brien has testified that he does not remember when this happened, but does remember his Florida housekeeper sending "very large packages containing their mail from their Florida home."[76] Lorene also, complains that Plaintiff has overstated the location of the O'Brien family's automobiles. While Mr. O'Brien transported his vehicles from Florida to Colorado, he claims he cannot remember if his wife did so as well.[77] Moreover, Lorene highlights that Mr. O'Brien "maintained other vehicles in Florida in [sic] July 8, 2009, including a boat and a golf cart."

Regarding Mr. O'Brien's son, Lorene claims that while he was enrolled in school in Colorado during 2009, Mr. O'Brien paid tuition for his son at a Florida school for the entire 2009 school year.[78] Lorene further highlights that while Mr. O'Brien had Colorado bank accounts, he simultaneously maintained Florida accounts as well.[79] Lorene states that Mr. O'Brien spent less than a month in his Florida home during 2009, but when he did stay he attended church and other church related functions.[80] Moreover, Lorene argues that it was not until January 14, 2010 that Mr. O'Brien rented office space in Colorado.

Lorene contends that while Mr. O'Brien and his family were in Colorado for much of 2009, "they never ended their Florida citizenship. They maintained their home in Florida, with the

---

[76] *Id.* at p. 5.

[77] *Id.*

[78] *Id.* at p. 6.

[79] *Id.* at p. 7.

[80] *Id.*

intention that if the trial period in Colorado did not work out, they could easily drive their cars back to Florida and continue to live in their Fisher Island home."[81]

### III. Law and Analysis

"It is axiomatic that the federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation. The parties can never consent to federal subject matter jurisdiction, and lack of such jurisdiction is a defense which cannot be waived."[82] The Fifth Circuit has held that even if not raised by the parties "federal courts are duty-bound to examine the basis of subject matter jurisdiction *sua sponte*, even on appeal."[83]

To invoke diversity jurisdiction, there must be complete diversity between all plaintiffs and all defendants at the time of filing.[84] If complete diversity was not present at the time of filing, an action must be dismissed for want of subject matter jurisdiction.[85] At issue here is whether Plaintiff and Mr. O'Brien, a member of defendant Lorene, were citizens of the same state at the time of filing.

### A. Law of Domicile

"To be a citizen of a state within the meaning of the diversity provision, a natural person must be both (1) a citizen of the United States, and (2) a domiciliary of that state."[86] A person's domicile is the place of "his true, fixed, and permanent home and principal establishment, and to

---

[81] *Id.* at p. 8.

[82] *Coury*, 85 F.3d at 248.

[83] *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

[84] *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 570-71 (2004).

[85] *Id.*

[86] *Coury*, 85 F.3d at 248.

which he has the intention of returning whenever he is absent therefrom."[87] As previously discussed, a change in domicile requires (1) physical presence in a new location; and (2) an intention to remain there indefinitely.[88] A person's domicile persists until a new one is acquired or it is clearly abandoned. "There is a presumption in favor of the continuing domicile which requires a party to show a change in domicile to come forward with enough evidence to that effect to withstand a directed verdict."[89]

"In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties. The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction."[90] When domicile is in dispute, "the party attempting to show a change assumes the burden of going forward on that issue. The ultimate burden on the issue of jurisdiction rests on the plaintiff or the party invoking federal jurisdiction."[91] To determine intent to change domicile, a court should consider where a litigant exercises civil and political rights, pays taxes, owns real and personal property, has a driver's or other licenses, maintains bank accounts, belongs to clubs or churches, has places of business or employment, and maintains a home for his family.[92] "A litigant's statement on intent is

---

[87] *Stine*, 213 F.2d at 448.

[88] *Coury*, 85 F.3d at 250 (internal citations omitted).

[89] *Id.*

[90] *Id.* at 249.

[91] *Id.*

[92] *Id.* at 251.

relevant to the determination of domicile, but is entitled to little weight if it conflicts with objective facts."[93]

"Most courts regard the domicile as presenting a mixed question of law and fact. Nevertheless, in practice, the district court's determination of domicile is reviewed on appeal as a question of fact; it will be upheld unless 'clearly erroneous.'"[94]

### B. Plaintiff's Citizenship

The Court will first address the citizenship of Plaintiff, as this issue could obviate the need to determine the citizenship of Mr. O'Brien, because if Plaintiff is a Louisiana domiciliary, as he claims, then whether Mr. O'Brien was a Florida or Colorado domiciliary at the time of filing would have no bearing on diversity. However, if Plaintiff was a Florida domiciliary at the time of filing, then the Court must determine the citizenship of Mr. O'Brien at the time this lawsuit was filed.

The Court notes that in all pleadings up until this point, Plaintiff has identified himself as a Florida citizen at the time of filing.[95] Lorene and Whitney have also pointed to many statements made by Plaintiff in support of his Florida citizenship before the Court raised these jurisdictional issues. On February 3, 2010, Plaintiff stated under oath in a deposition that he lived in Santa Rosa Beach, Florida, and had so for 10 months.[96] Taking Plaintiff's own statements as true, this would mean that he lived in Florida since at or around April 2009 and through July 2009, when this action was filed. While Plaintiff has worked in Louisiana for many years, he stated that during the time

---

[93] *Id.*

[94] *Id.* (internal citations omitted).

[95] *See* Rec. Docs. 1, 18, 106, 143.

[96] Rec. Doc. 232-3 at p. 8.

before and after the filing of this suit he would stay at his aunt's place.[97] Plaintiff has also cited his extensive work history in Louisiana, as well as his Louisiana driver's license, and bills, as evidencing his Louisiana citizenship.

In deposition, Plaintiff explained that his wife worked for the Air Force and that is "why *we* actually made the move over to Florida."[98] Independent of the context of subject matter jurisdiction, when Plaintiff was asked directly in February 2010 in that sworn deposition where he lived, he responded with his Santa Rosa Beach, Florida address and stated that he had lived there for ten or eleven months.[99] While the Court acknowledges Plaintiff's many contacts with Louisiana, he also has many contacts with Florida, where his wife permanently lives and where he admits he returned on weekends. Nevertheless, Plaintiff's own statements that he moved to Florida for his wife's employment indicate to the Court that he had the intent to reside in Florida, where his spouse lived and worked and where he returned on weekends. When he was in Louisiana, he would stay at his aunt's home. Plaintiff has asserted his Florida citizenship at all times before the pending motion, and in fact relied on this assertion to establish diversity when filing this lawsuit.

In *Hendry v. Masonite Corp.*,[100] the Fifth Circuit reversed the district court's finding of jurisdiction and remanded the suit to Mississippi state court after finding that the district court erred in finding a defendant was a citizen of Illinois at the time of filing. This defendant had lived in Mississippi, but due to a promotion planned to move to Chicago, Illinois. At the time this defendant

---

[97]  Rec. Doc. 227-1 at p. 5 (emphasis added).

[98]  *Id.*

[99]  Rec. Doc. 213-4 at p. 2.

[100]  455 F.2d 955 (5th Cir. 1972).

was joined in the suit, he was living in temporary lodging in Chicago. In finding that this defendant was still a Mississippi citizen at the time of filing, the Fifth Circuit noted that even though it was clear the defendant had an intention to change his domicile at some time in the future, "his family still lived [in Mississippi]" and "[o]nly his working time was spent in Chicago."[101] The court also highlighted that he last voted in Mississippi and that the only home he owned was in Mississippi.

Here, Plaintiff's family, his spouse, remained in Florida at a home Plaintiff identified as his residence; additionally, Plaintiff only spent his work time in Louisiana, and would return to Florida on weekends to be with his wife. While at the time of filing Plaintiff owned a home in Slidell, Louisiana, he instead stayed at his aunt's home. Furthermore, Plaintiff had put his Slidell home up for sale at or around May or June of 2009. In the February 3, 2010 deposition, Plaintiff provided a Florida license issued January 29, 2010. When asked if he had a Florida license before, Plaintiff responded, "No, sir. No sir. *But I lived there*. I was just – all my bills are sent there and everything. I just wasn't sure if I was going to – because I actually come back and forth [to Louisiana] *to work*."[102] When Plaintiff was asked if he still owned the Slidell home, which he no longer stayed in, he answered, "We're actually – it's been for sale for a while ... Probably eight months, nine months.[103] As recognized by the *Hendry* court, where a person's family resides and where they spend their non-working time is relevant to that person's citizenship. Here, both of those factors suggest that Florida was Plaintiff's place of citizenship. While Plaintiff still owned a home in Louisiana, he has stated that he had begun to stay at his aunt's home; moreover, because the home was for sale,

---

[101] *Id.* at 956.

[102] Rec. Doc. 235-1 at p. 4 (emphasis added).

[103] *Id.* at p, 5,

it is clear he did not intend to retain that home. Nowhere has Plaintiff even suggested that he intended to purchase or rent another home in Louisiana. Considering all these factors, and especially Plaintiff's repeated statements that he considered Florida his home, the Court finds that Plaintiff was a Florida citizen at the time of filing.

### B. Mr. O'Brien's Citizenship

Lorene asserts that Mr. O'Brien was a Florida citizen at the time that this suit was filed. It is not disputed that at one point, Mr. O'Brien was a Florida citizen, but Plaintiff claims that at the time of filing, he was a Colorado citizen. On July 8, 2009, Mr. O'Brien was physically present in Colorado, but retained his Florida home.[104] As a person's domicile persists until a new one is acquired or the old one is clearly abandoned, there is a presumption in favor of Mr. O'Brien's continuing domicile in Florida. A change in domicile requires (1) physical presence in a new location; and (2) an intention to remain there indefinitely.[105] It is not in dispute that at the time this action was filed, Mr. O'Brien was physical present in Colorado. However, the question of whether Mr. O'Brien intended to remain in Colorado indefinitely remains. To determine intent to change domicile, a court should consider where a litigant exercises civil and political rights, pays taxes, owns real and personal property, has a driver's or other licenses, maintains bank accounts, belongs to clubs or churches, has places of business or employment, and maintains a home for his family.[106] Plaintiff, who is the party asserting federal jurisdiction, carries the burden on this issue.[107]

---

[104]  Rec. Doc. 213-1 at p. 4.

[105]  *Coury*, 85 F.3d at 250 (internal citations omitted).

[106]  *Id.* at 251.

[107]  *Id.*

Mr. O'Brien never voted in Colorado prior to July 8, 2009, the date of filing. Before July 8, 2009, he last voted in Florida. While Plaintiff claims that Mr. O'Brien has admitted that he registered to vote in Colorado prior to the date of filing, this is not a completely accurate statement. Mr. O'Brien stated in a sworn deposition that he believed he may have been automatically registered to vote in Colorado when he received a Colorado driver's license.[108] This is an important distinction because it evidences a lack of intent for Mr. O'Brien to exercise political rights in Colorado at this time. In *Hendry,* the court found that where a person last voted indicated his citizenship. Prior to the filing of this suit, Mr. O'Brien last voted in Florida, and only first voted in Colorado after the filing of this suit. As Mr. O'Brien last voted in Florida, this factor weighs in favor of Mr. O'Brien retaining his Florida citizenship.

Mr. O'Brien paid state income taxes in 2009 in Colorado, but not Florida. However, Florida does not have a state income tax, so the Court must take that into consideration. Also, on Mr. O'Brien's 2009 Colorado state income taxes, he listed his status as "Part-Year Resident or Non-Resident," but in 2010 listed his status as "Full-Year Resident." These actions, taken before this dispute as to his domicile, are consistent with Mr. O'Brien's contentions that he never had the intention to not return to Florida until late 2009 or early 2010. Considering the presumption in favor of continuing domicile, this factor weighs in favor of a finding that Mr. O'Brien was a Florida citizen at the time of filing.

At the time of filing, Mr. O'Brien had not sold his Florida home and it was not on the market, and therefore this Court cannot say that Mr. O'Brien "clearly abandoned" his Florida domicile. As the Fifth Circuit highlighted in *Hendry*, it is important to note that "the only home [Mr. O'Brien]

---

[108] *See* Rec. Doc. 227-10 at p. 11.

owned" was in Florida.[109]  In *Hendry*, the Fifth Circuit found that the district court erred in finding that a defendant's domicile had changed even when the defendant was physically present in the new location and had a clear intent to make that place his domicile in the near future; the court also found relevant the fact that the defendant still owned his Mississippi home at the time he was joined in the lawsuit, even though it was for sale.[110] Here, at the time of filing Mr. O'Brien not only still owned his Florida home, but it was not even for sale. Therefore, there is an even stronger presumption here than in *Hendry* that Mr. O'Brien retained his prior Florida domicile and was therefore a Florida citizen at the time of filing.

Considering the evidence before the Court, it appears that Mr. O'Brien had both a Florida and Colorado driver's license at the time of filing. However, the Colorado license was issued later than the Florida license. Therefore, this factor is either neutral, or weighs sightly in favor of a finding that Mr. O'Brien was a Colorado citizen at the time of filing.

Regarding bank accounts, Mr. O'Brien maintained bank accounts in both Florida and Colorado at the time of filing. Therefore, this factor is either neutral, or weighs slightly in favor of a finding of Florida citizenship, because there is a presumption that one retains his old citizenship.

The only evidence presented of Mr. O'Brien's association with clubs or churches at the time of filing is that he belonged to a church in Florida. He has testified that he and his wife regularly participated in several events with the church. Neither party presented any evidence that Mr. O'Brien belonged to any clubs or churches in Colorado at the time of filing. Therefore, this factor weighs in favor of finding Mr. O'Brien was a citizen of Florida.

---

[109]  455 F.2d at 956.

[110]  *Id.*

Until March 31, 2009, Mr. O'Brien leased a business office in Florida, and thereafter conducted business "out of his residences." It was not until January of 2010 that he first leased business space in Colorado. Mr. O'Brien did not have the type of job where he needed to report to an office, and appears to have been able to make his own hours and work where he pleased. However, the Court notes that it was only after the date of filing that Mr. O'Brien rented business space in Colorado. Therefore, this factor weighs in favor of a finding that Mr. O'Brien retained his Florida citizenship at the time of filing.

Finally, on July 8, 2009, Mr. O'Brien and his family were in Colorado. However, at all times until that date, Mr. O'Brien retained his Florida home, and in fact retained the services of a housekeeper who would send him the family's mail. Therefore, there is no clear indication that Mr. O'Brien "maintained a home" solely in Colorado, because he still received mail and paid for services at his Florida home.

After considering all of these factors, the majority weighing in favor of finding that Mr. O'Brien had not abandoned his Florida domicile, the Court finds that Mr. O'Brien was a Florida citizen at the time of filing. As the party asserting diversity jurisdiction, Plaintiff carries the burden on this issue, and has not directed the Court to persuasive evidence that Mr. O'Brien had the intention of abandoning his Florida domicile at the time this suit was filed. Moreover, Plaintiff has not overcome the presumptions of continuing domicile or the "presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."[111] Accordingly, considering that both Plaintiff and Mr. O'Brien were citizens of Florida at the time Plaintiff's

---

[111] *Coury*, 85 F.3d at 248.

complaint was filed, diversity did not exist at the time of filing, and this Court is without subject matter jurisdiction to hear this case.

## IV. Conclusion

After examining all the facts and law presented by the parties, the Court finds that Plaintiff and Mr. O'Brien, a member of defendant Lorere, were citizens of Florida at the time this action was filed. Considering the basis asserted for jurisdiction in this matter is 28 U.S.C. § 1332, diversity of citizenship, this Court finds it lacks subject matter jurisdiction and the suit must be dismissed. Accordingly,

**IT IS HEREBY ORDERED** that Lorene's Motion to Dismiss for Lack of Subject Matter Jurisdiction[112] is **GRANTED** and this matter is **DISMISSED**.

**NEW ORLEANS, LOUISIANA**, this 25th day of January, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[112] Rec. Doc. 213.

24